UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80112-CV-MIDDLEBROOKS
MAGISTRATE JUDGE REID

JIMMIE WILLIAMS,

        Petitioner,

v.

STATE OF FLORIDA,

        Respondent.

## REPORT OF MAGISTRATE JUDGE

Petitioner has filed a *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [ECF No. 11]. His Amended Petition attacks the constitutionality of his judgment of conviction in Case No. 50-2014-CF-00091-AXXX-MB in Fifteenth Judicial Circuit of Florida, Palm Beach County. For the reasons discussed below, the Amended Petition should be **DENIED**.

### I.    Background

The state charged Petitioner with burglary of a dwelling, grand theft, and possession of burglary tools. [ECF No. 16-2 at 2[1]]. The jury found him guilty on all charges. [*Id.* at 211]. The trial court sentenced him to 15 years' imprisonment on the burglary charge as a prison releasee reoffender and five years on the other two charges, to run concurrently. [*Id.* at 224-27]. Petitioner appealed. [*Id.* at 232]. On October 20, 2016, the Fourth District Court of Appeals ("Fourth District") affirmed without comment. [*Id.* at 321].

On May 17, 2017, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. [*Id.* at 325]. The trial court denied this motion in a reasoned

---

[1] All citations to ECF entries refer to the page-stamp number at the top, right-hand corner of the page.

order. *See* [*id.* at 604]. Petitioner again appealed. [*Id.* at 831]. The Fourth District affirmed without comment, issuing its mandate on November 30, 2018. [*Id.* at 853, 855].

On January 18, 2019, Petitioner timely filed a § 2254 Petition, [ECF No. 1], which he amended, [ECF No. 11]. Respondent filed a Response. [ECF No. 16]. Petitioner did not file a reply, despite being informed that he may do so. [ECF No. 12]. Accordingly, this case is now ripe for disposition.

## II.     Legal Standard Under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1)'s "contrary to" clause, courts may grant the writ if the state court: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under its "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. "[C]learly established Federal law" consists of Supreme Court "precedents as of the time the

state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and emphasis omitted).

An unreasonable application of federal law differs from an incorrect application of federal law. *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). Under this standard, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015). That is, "[a] state court's . . . determination of facts is unreasonable only if no 'fairminded jurist' could agree with the state court's determination." *Id.* (citation omitted).

Under § 2254(d), where the decision of the last state court to decide a prisoner's federal claim contains no reasoning, federal courts must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "It should then presume that the unexplained decision adopted the same reasoning." *Id.*

A contrastable situation occurs when the decision of the last state court to decide a federal claim contains no reasoning and there is "no lower court opinion to look to." *Id.* at 1195. In this case, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99 (citation omitted). Thus, in this scenario, "[s]ection 2254(d) applies even [though] there has been a summary denial." *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted). Because § 2254(d) applies, and because the last state court decision is unreasoned and there is no lower

3

court decision to look to, "a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision[] and . . . ask whether [they] are inconsistent with [Supreme Court precedent]." *See Harrington*, 562 U.S. at 102.

### III. Ineffective Assistance of Counsel Principles

To establish a claim of ineffective assistance of counsel, petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To prove deficiency, he must show that his attorney's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To prove prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

It is "all the more difficult" to prevail on a *Strickland* claim under § 2254(d). *Harrington*, 562 U.S. at 105. As the standards that *Strickland* and § 2254(d) create are both "highly deferential," review is "doubly" so when the two apply in tandem. *Id.* (citation omitted). Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Id.* Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner has the burden of proof on his ineffectiveness claims, *see Holsey v. Warden*, 694 F.3d 1230, 1256 (11th Cir. 2012), as well as the burden of proof under § 2254(d). *See Pinholster*, 563 U.S. at 181.

4

## IV.   Legal Analysis

A.   <u>Claim One</u>

Petitioner contends that the state failed to prove beyond a reasonable doubt that he committed the offense of burglary. [ECF No. 11 at 5]. In support, he contends that the evidence was "circumstantial," that the state "failed to establish a nexus sufficient enough to conclude that [he] was the perpetrator," and that there "were violations of procedure that [] vitiated the authenticity of the evidence." [*Id.* at 6]. Petitioner does not provide any supporting factual allegations. [*Id.*].

This claim is conclusory and fails for this reason alone. *See McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Habeas corpus petitions must meet heightened pleading requirements." (citing R. 2(c), Rules Governing § 2254 Cases)); *see also Garlotte v. Fordice*, 515 U.S. 39, 46 (1995) ("[T]he habeas petitioner generally bears the burden of proof[.]").

Furthermore, the Fourth District reasonably rejected this claim. [ECF No. 16-2 at 251-57, 321]. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When reviewing the sufficiency of the evidence to support a criminal conviction, a federal habeas court must "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318-19. "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citation omitted).

5

The Supreme Court has "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*). In this context, "the only question under *Jackson* is whether [the state court's decision] was so insupportable as to fall below the threshold of bare rationality." *Id.* at 656.

Here, albeit circumstantial, the evidence that Petitioner committed the burglary was strong. Someone broke into the victim's house and took a large flat-screen TV. *See, e.g.*, [ECF No. 16-2 at 37-39, 110-11]. Petitioner lived at a house that was a two- to three-minute car drive to the victim's house. *See, e.g.*, [*id.* at 113]. After responding to the burglary, the police continuously monitored Petitioner's vehicle. *See, e.g.*, [*id.* at 51-56]. Eventually, an officer watched him nervously load a large flat-screen TV into his vehicle from his residence. [*Id.* at 57-58]. Petitioner later met his girlfriend at a restaurant, after which the police stopped him and found the victim's flat-screen TV in his vehicle. [*Id.* at 115-16]. Further, the police found a screwdriver, rubber gloves, and a Leatherman tool with a flashlight. [*Id.* at 89]. The screwdriver fit the pry marks on the victim's door. [*Id.* at 95, 106]. While the police monitored him, Petitioner did not encounter anyone besides his girlfriend and the employees at the restaurant, which was a drive-thru. [*Id.* at 59-60, 76, 85, 106].

This testimony contradicted Petitioner's explanation for having the television, which the jury heard through a recorded interview with the police. [*Id.* at 122-29]. Pertinently, Petitioner stated that he bought the TV from "Chad" at said restaurant and took it back to his residence before reloading it in his vehicle to take to another residence. [*Id.* at 122-24]. The victim, whose name is not Chad, testified that he did not recognize Petitioner or give him permission to take the television. [*Id.* at 35, 44].

The Fourth District's decision that this circumstantial evidence was sufficient to support Petitioner's burglary conviction surpassed the threshold of bare rationality. *See generally Durousseau v. State*, 55 So. 3d 543, 556 (Fla. 2010) (*per curiam*) ("In criminal cases, Florida law permits the State to rely on circumstantial evidence to prove the guilt of a defendant." (citation omitted)). Accordingly, its rejection of claim one was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Thus, this claim should be denied.

B.   Claim Two

Petitioner contends that the evidence was insufficient to support his conviction for possession of burglary tools. [ECF No. 11 at 6]. In support, he contends that the state failed to "present the proper scientific evidence" that the tools found in his vehicle "were used by him in the commission of a burglary." [*Id.* at 6-7]. This is because the officers who matched the screwdriver to the pry marks on the victim's door were not qualified as expert witnesses. [*Id.* at 7]. Petitioner adds that the tools "were not properly tagged and logged as evidence before they were moved from their location and tested." [*Id.*]

Here, the Fourth District reasonably rejected this claim. [ECF No. 16-2 at 262-67, 321]. For starters, the arguments petitioner raises here to support this claim go to the admissibility of the evidence. *See Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994) ("As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence." (citations omitted)). There was strong circumstantial evidence of Petitioner's guilt, including his "unexplained possession of recently stolen goods." *Walker v. State*, 896 So. 2d 712, 717 (Fla. 2005). Therefore, these alleged evidentiary errors did not "deny fundamental fairness to [his] criminal trial[.]" *See Zant*, 22 F.3d at 1555 (citation omitted).

7

Furthermore, while Petitioner contends that the trial court improperly admitted the officer's testimony that the screwdriver caused the pry marks, the officers still found him with the screwdriver and Leatherman tool near the recently stolen TV. Additionally, the state presented evidence of forced entry into the victim's house, including pry marks. *See, e.g.*, [ECF No. 16-2 at 39]. Thus, even absent the officers' testimony that the screwdriver caused the pry marks, the jury rationally could have concluded that Petitioner "used [those tools] . . . to unlawfully enter the premises of [the victim]." *See Calliar v. State*, 760 So. 2d 885, 887 (Fla. 1999).

In sum, the Fourth District's rejection of claim two was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim should be denied.

C.   Claim Three

Next, Petitioner contends that counsel ineffectively failed to "file a legally sufficient motion for judgment of acquittal for counts one [through] three." [ECF No. 11 at 7]. In support, he contends that counsel's motion lacked "a proper factual basis for its conclusions." [*Id.* at 7-8]. Further, he contends that "various deficiencies existed in the state's case" and that counsel failed in his duty to "properly identify each constituent and bring forth his objections based upon law and fact." [*Id.* at 8]. Petitioner does not provide any further factual allegations or reasonably explain what argument counsel should have made. [*Id.* at 7-8]. This claim is conclusory and fails for this reason alone. *See McFarland*, 512 U.S. at 856; *see also Holsey*, 694 F.3d at 1256.

Furthermore, this claim lacks merit. The Undersigned reviews this claim *de novo* because the state court appeared to overlook Petitioner's argument that counsel ineffectively failed to file a proper motion for judgment of acquittal. *Compare* [ECF No. 16-2 at 326-335], *with* [*id.* at 384-87], *and* [*id.* at 604]; *see also Childers v. Floyd*, 736 F.3d 1331, 1334 (11th Cir. 2013) (*en banc*)

(habeas courts may review *de novo* a claim that the state court "inadvertently overlooked" (citation omitted)).

"[Florida Rule of Criminal Procedure] 3.380(a) provides that a motion for judgment of acquittal should be granted if, at the close of the evidence, the court is of the opinion that the evidence is insufficient to warrant a conviction." *Tibbs v. State*, 397 So. 2d 1120, 1123 n.9 (Fla. 1981). "There is sufficient evidence to sustain a conviction if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt." *Baugh v. State*, 961 So. 2d 198, 204 (Fla. 2007) (citation omitted).

Here, Petitioner's wholly conclusory allegations fail to show that, viewing the state's evidence in the most favorable light, a rational fact trier could not have found that the prosecution proved the elements of his offenses of conviction beyond a reasonable doubt. As discussed above, *supra*, Part IV(A), the prosecution provided strong circumstantial evidence of his guilt. And, again, Petitioner has not explained what arguments counsel could have made that would have changed this conclusion. Therefore, Petitioner cannot show deficiency or prejudice on this claim, which should be denied.

D.     Claim Four

Fourth, Petitioner contends that counsel ineffectively persuaded him not to testify by telling him that the state would impeach him with his prior convictions and destroy his credibility. [ECF No. 11 at 8]. This advice allegedly prejudiced Petitioner because his testimony would have "conclusively refute[d] the state's allegations." [*Id.* at 9]. Petitioner does not state what testimony he would have provided. [*Id.* at 8-9]. The trial court rejected this claim on the ground that Petitioner

9

could not show prejudice based on his allegation that he "would have testified to his innocence." [ECF No. 16-2 at 386, 604].

Here, as noted, Petitioner's recorded statement to the police, in which he professed his innocence, was played for the jury. Therefore, any testimony regarding his alleged innocence would have been duplicative. Indeed, while Petitioner's allegations here are conclusory, his 3.850 motion shows that his testimony would have duplicated the statements from his interview. *Compare* [ECF No. 16-2 at 122-29], *with* [*id.* at 336-37]; *see also Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011) ("Obviously, a petitioner cannot satisfy the prejudice prong of the *Strickland* test with evidence that is merely cumulative of evidence already presented at trial." (citations omitted)). The state courts' rejection of claim four was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts, and as such, this claim should be denied.

E.   Claim Five

Here, Petitioner contends that counsel ineffectively failed to "request that any scientific testing be conducted on the items sought by the state to be introduced as evidence." [ECF No. 11 at 9]. Allegedly, the "lack of any testing . . . contravened counsel's duty to investigate his client's case[] and obtain exculpatory evidence." [*Id.* at 10]. Petitioner adds that counsel's "unprof[]esional behavior failed to test the state's theory of prosecution, and led to the unjustified conviction of [] petitioner." [*Id.*] Petitioner does not offer any further supporting allegations. [*Id.* at 9-10]. The trial court rejected this claim, reasoning that Petitioner could not show prejudice even if Petitioner's DNA was not on the burglary tools. [ECF No. 16-2 at 387, 604].

The trial court reasonably rejected this claim. Petitioner does not specify here what kind of "scientific testing" counsel allegedly failed to request. Thus, he has not rebutted the trial court's

finding that he faulted counsel for failing to request DNA testing. Furthermore, the trial court reasonably concluded that the absence of Petitioner's DNA on the tools would not have created a reasonable probability of a more favorable outcome. As discussed above, Petitioner could not sensibly explain why he possessed the recently stolen television and the officers testified that the screwdriver fit pry marks on the door. Therefore, the jury almost assuredly would have convicted him even had counsel introduced evidence showing that his DNA was not on the tools. This is especially so considering that Petitioner possessed rubber gloves, which might have explained any lack of DNA on the tools. *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim." (citation omitted)).

In sum, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Thus, this claim should be denied.

F.      Claims Six and Seven

Petitioner contends that counsel ineffectively failed to object to allegedly false testimony and evidence from the victim and an officer. [ECF No. 11 at 10-13]. He alleges that these witnesses falsely testified that his door showed signs of a forced entry. [*Id.* at 11]. Petitioner accuses the state of presenting "doctored images of the front door." [*Id.*] In support, he appears to allege that the state's discovery showed the door with no damage but that one or more of the photographs introduced at trial showed the door damage. *See, e.g.*, [*id.* at 12]. The trial court rejected this claim on the ground that the trial transcript contradicted it. *See* [ECF No. 16-2 at 387-88, 604]. The trial court also found that the photos were not favorable to Petitioner. [*Id.* at 389, 604]. The Fourth District affirmed without comment. [*Id.* at 853].

The trial court reasonably rejected this claim. The state presented testimony and photographic evidence purporting to establish that the door did not have pry marks before the burglary but that it had pry marks shortly thereafter. [*Id.* at 38-39, 94-95]; *see also* [*id.* at 483-88 (images shown at trial)]. Furthermore, the victim testified that he "resecured" the door after the burglary by installing a "metal plate . . . in front of the deadbolt." [*Id.* at 39]. Thus, the trial transcript does not support this claim. Moreover, the photographs in the state's discovery appear to support the victim's testimony that it had pry marks and that he installed a metal plate in front of the deadbolt. *See* [*id.* at 479-81]. Therefore, the court would have overruled any objection to this testimony or the images. *See Freeman*, 536 F.3d at 1233.

As such, the state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim should be denied.

G. <u>Claim Eight</u>

Petitioner contends that counsel ineffectively failed to move for a mistrial or seek a curative instruction when an officer testified that Petitioner was under surveillance, versus testifying that he was under observation. [ECF No. 11 at 13-14]. In support, Petitioner notes that the trial court ruled that the state's witnesses could not testify that Petitioner was under surveillance because it could implicate him as a suspect in the crimes they were investigating. [ECF No. 16-2 at 12-17].

Nevertheless, an officer testified on direct examination that, after observing Petitioner in his vehicle, he returned to Petitioner's residence and "started [his] surveillance back there." [*Id.* at 56]. Defense counsel objected. [*Id.*]. The court suggested that the prosecutor use "a leading question" to avoid saying surveillance. [*Id.* at 57]. Counsel did not move for a mistrial or request a curative instruction and the parties did not address the matter further. [*Id.*]

The trial court rejected this postconviction claim. [*Id.* at 389-90, 604]. It reasoned that there was no basis for a mistrial because "the error was [not] so prejudicial as to vitiate the entire trial." [*Id.* at 389-90 (citations omitted)]. Further, the trial court reasoned that a curative instruction would have done more harm than good because it would have "placed unnecessary additional focus on the wording utilized." [*Id.* at 390].

Here, the trial court reasonably rejected this claim. "[A] mistrial is appropriate only when the error committed was so prejudicial as to vitiate the entire trial." *Duest v. State*, 462 So. 2d 446, 448 (Fla. 1985) (citation omitted). The trial court almost assuredly would have concluded that the officer's fleeting use of the word "surveillance" did not vitiate the entire trial. The officers had already testified that they were "monitoring" and "observing" Petitioner. Thus, it is reasonable to assume that the jurors understood the word surveillance similarly and did not infer that Petitioner was a suspect in the burglary. Furthermore, after counsel's objection, the officers did not use the word surveillance again. Moreover, there is a reasonable argument that asking for a curative instruction would have focused the jury's attention on the officer's use of the word surveillance. *See United States v. Myers*, 917 F.2d 1008, 1010 (7th Cir. 1990) (stating that a cautionary instruction "may do more harm than good").

The state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Accordingly, this claim should be denied.

## V.    Evidentiary Hearing

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted). "[I]f a habeas petition does not allege enough specific facts that, if they were

13

true, would warrant relief, the petitioner is not entitled to an evidentiary hearing." *Id.* at 1319 (citations omitted). "The allegations must be factual and specific; conclusory allegations are simply not enough to warrant a hearing." *Id.* (citations omitted).

Here, an evidentiary hearing is improper. Petitioner's unsupported and conclusory allegations do not meet this standard.

## VI. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. 11(a), Rules Governing § 2254 Cases. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.* "If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id.* "A timely notice of appeal must be filed even if the district court issues a certificate of appealability." R. 11(b), Rules Governing § 2254 Cases.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a petitioner's constitutional claims on the merits, "a petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation omitted).

Here, in view of the entire record, the Undersigned denies a certificate of appealability. If Petitioner disagrees, he may so argue in any objections filed with the District Judge. *See* R. 11(a), Rules Governing § 2254 Cases ("Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.").

## VII. Recommendations

As discussed above, it is **RECOMMENDED** that Petitioner's Amended § 2254 Petition [ECF No. 11] be **DENIED**.

It is further recommended that no certificate of appealability issue; that final judgment be entered; and that this case be closed.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

SIGNED this 5th day of August, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

cc: **Jimmie Williams**
 899777
 Union Correctional Institution
 Inmate Mail/Parcels
 P.O.Box 1000
 Raiford, FL 32083
 PRO SE